DAVID PINKSTON *et al.*, Plaintiffs-Appellees, *v.* JAMES EARL HOLLAND, Mayor of the Village of Bush, Defendant-Appellant—(DAVID PINKSTON *et al.*, Plaintiffs-Appellees, *v.* DORIS HOLLAND, Village Clerk of the Village of Bush, Defendant-Appellant.)

(No. 69-166; ▉▉▉▉▉▉▉▉

Fifth District—June 15, 1971.

James W. Sanders, of Marion, for appellants.

Robert L. Butler, of Marion, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendants appeal from an order of the Circuit Court of Williamson County which invalidated the election of defendant James Earl Holland as Mayor, and defendant Doris Holland as Clerk and Treasurer, of the Village of Bush.

An election for village officers was held in the Village of Bush on April 15, 1969. Defendant James Earl Holland was listed as a candidate for

Mayor on the People's Party ticket, plaintiff Richard Holland was a candidate for Mayor on the Independent Party ticket, and plaintiff David Pinkston was a candidate for Mayor on the Improvement Party ticket. Defendant Doris Holland was listed as a candidate for Clerk and Treasurer on the People's Party ticket. Defendant Doris Holland is the wife of defendant James Earl Holland. For the office of Mayor defendant Holland received 95 votes, plaintiff Holland 15 votes, plaintiff Pinkston 50 votes. For the office of Clerk and Treasurer, defendant Doris Holland received 102 votes. She was unopposed by a regular candidate but Carl Harris received 20 write-in votes and Lillian Barr received 1 write-in vote. On May 3, 1969 defendant James Earl Holland was declared to have been elected the Mayor and defendant Doris Holland was declared to have been elected the Clerk and Treasurer.

Plaintiffs filed separate petitions to contest the election of defendant James Earl Holland as Mayor and Doris Holland as Village Clerk and Treasurer. The cases were consolidated for trial and this appeal. The petition alleged, and the evidence established, various irregularities and improprieties in connection with the conduct of the election. At the trial it was stipulated that there were 170 applications for ballots in the poll books but 175 ballots actually voted, that two of the 175 ballots were declared spoiled ballots by the judges of the election, that six of the 175 ballots were improper ballots in that they were not initialed by a judge of the election or were marked with a check mark rather than an "X." The evidence shows that David Pinkston filed a petition as a candidate under the Independent Party and his name was placed on the ballot under the Improvement Party. Richard Holland filed a petition as an independent candidate but his name was placed on the ballot under the Independent Party and not as an independent candidate. Richard Holland and James Earl Holland filed petitions as candidates for Village President and the names were placed on the ballot as candidates for Mayor. (The chief executive officer of an incorporated Village is the President, per Ill. Rev. Stat., ch. 24, Art. 3, sec. 5—1, ch. 24, Art. 1, sec. 1—1—2.1, cited by defendant which provides that the President of a Village may be referred to as Mayor or President was not in effect at the time of the election in question.) Doris Holland's name appeared on the ballot as a candidate for the office of "Clerk and Treasurer," a non-existent office. (The Village Clerk is an elective office, per Ill. Rev. Stat., ch. 24, Art. 3, sec. 5—9. There is no statutory authority establishing or authorizing the establishment of the combined offices of "Clerk and Treasurer.") The Clerk's facsimile signature was not printed on the official ballots but the Clerk manually signed her name upon the ballots, some on the evening before the election and some on election day at

the polling place. The defendants James Earl Holland and Doris Holland, the incumbent Village President and Clerk, obtained ballots from two incapacitated voters on the day prior to the election without receiving or obtaining applications for ballots. Many of the persons signing applications and making affidavits for ballots neglected to list any address contrary to the requirement of the statute. Two incapacitated voters were assisted in voting in the polling place by an election judge without the requisite affidavit requesting assistance. Three nonresidents were permitted to vote in the election contrary to the statute.

In our opinion the judgment of the trial court in avoiding this election was correct and it will be affirmed. From the myriad violations of the statutes pertaining to the conduct of elections we would single out but one which in itself is sufficient to invalidate the election. That is the failure of the Clerk of the election to obtain ballots containing the printed facsimile signature of the Clerk upon the reverse side of the ballot, and her attempt to rectify the omission by manually signing her name upon the ballots.

As provided in Article 17, Section 24, of the Election Code the manner of providing, printing and distributing ballots for election of Village Officers must conform to Article 16 of the Election Code. Article 16 of the Election Code pertains to the ballots to be used in elections and its Section 1 contains its own affirmation of its applicability to the election of Village Officers. Section 3 directs that on the back or outside of the ballot there shall be a facsimile of the signature of the Clerk or other officer who has caused the ballots to be printed. And Article 17, Section 16 of the Election Code provides that:

> "No ballot without the official endorsement shall be deposited in the ballot box, and none but ballots provided in accordance with the provisions of this Act shall be counted."

■■ It is stated in *People v. Graham*, 267 Ill. 426, 108 N.E. 699, that the courts have frequently considered the question as to whether statutes regulating elections were mandatory or directory, that a mandatory provision in a statute is one the omission to follow which renders the proceeding to which it relates illegal and void while a directory provision is one the observance of which is not necessary to the validity of the proceeding; that the controlling question is, what was the intention of the legislature? The language of Article 17, Section 16 quoted above makes clear the intent of the legislature that the failure to provide ballots containing a facsimile signature of the Clerk or officer preparing the same shall be regarded as mandatory, and not merely directory, and that the requirement cannot be disregarded, and an election conducted with ballots which fail to contain the facsimile

signature must be declared void. It has been so held. In *People v. Bushu,* 288 Ill. 277, 123 N.E. 517, the court avoided an election upon the proposition for or against an annual road tax where the ballots used did not contain the facsimile of the signature of the town clerk on the back thereof. The court stated: "A provision requiring the *facsimile* of the signature of the town clerk or other officer who prepares the ballots is to prevent the fraudulent casting of spurious or illegal ballots. That provision is mandatory, and ballots which do not contain such *facsimile* are illegal ballots." In *People v. Wilmington Coal Co.,* 402 Ill. 161, 83 N.E.2d 741, the court avoided a special election in a high school district purporting to authorize an increase in taxes for educational purposes where the ballot used contained no facsimile signature. It was stated that the failure of the ballots to bear the facsimile signature of the public official causing the ballots to be printed makes both the election and ballots illegal and void. In *People v. Snedeker,* 282 Ill. 425, 118 N.E. 782, it was held that an election upon the proposition of whether or not a township should adopt a Single Highway Commissioner System was void because the ballots used did not contain the words "Official Ballot," followed by the designation of the polling place for which the ballot was prepared, the date of the election and the facsimile of the signature of the Clerk or other officer who caused the ballots to be printed.

■■ The defendants argue that the genuine, manually applied signature of the Clerk is as good, or even better, than the printed facsimile signature. We disagree. It can be readily seen that to permit the use of the manually applied signature of the clerk upon ballots would convert an official act into a personal act and constitute an open invitation to fraud, controversy, and disruption.

■■ Apart from the failure of the ballots used in the election to contain the facsimile signature of the clerk we are of the opinion that there were sufficient other irregularities in the election to sustain the order of the trial court. While some of the established violations of the provisions of the Election Code could, when singularly considered, be termed irregularities or merely directory and not mandatory in nature, and therefore of insufficient force to invalidate the election, yet we think the accumulated weight of the violations and errors present here constitute too great a burden to be borne by the concept of free and fair elections. Appropriate here is the comment of the court in *Drolet v. Stentz,* 83 Ill. App.2d 202, 227 N.E.2d 114:

> "The provision of the Election Code, Ill. Rev. Stats. ch. 46, is a legislative expression of how and in what manner an election should be conducted. On the record before us we deal not with a single failure to comply with the rules governing elections, but

with multiple violations. Inadvertent non-compliance with some legislative directions for the conduct of elections need not vitiate the vote in a given precinct. Where, as here, the violations are so numerous and so gross that, an accurate calculation of the valid and invalid votes is impossible, we reach the end of a deadend street * * *. The gross disregard for numerous simple and plain statutory requirements should not, under these circumstances, be judicially condoned. We therefore conclude that the election in that precinct is abortive. It is better that the voters in one precinct in one election be disenfranchised than that a judicial key to fraud and chicanery be molded or that the temptation to ignore the legislative directives for the assurance of a free and equal election be encouraged."

Also see *People v. Graham, supra; Hester v. Kamykowski,* 13 Ill.2d 481, 150 N.E.2d 196; *Clark v. Quick,* 377 Ill. 424, 36 N.E.2d 563; *Webb v. Benton Consolidated High School District No. 103 in Franklin County, Illinois,* 264 N.E.2d 415.

For the reasons stated the order of the trial court will be affirmed.

Order affirmed.

EBERSPACHER and G. MORAN, JJ., concur.