## Village of Hinsdale et al., Appellants, v. County Court of DuPage County, Appellees.

### Gen. No. 8,950.

Opinion filed October 11, 1935.

MALCOLM MECARTNEY, of Chicago, for appellants.

EDWARD R. NADELHOFFER and GEORGE W. THOMA, of Wheaton, for certain appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

On April 17, 1934, there were submitted upon separate ballots to the voters of the village of Hinsdale, under the provisions of the Illinois Liquor Control Law, the following two propositions: . First, "Shall the sale at retail of alcoholic liquor be prohibited in this Village of Hinsdale" and second, "Shall the sale at retail of alcoholic liquor (or alcoholic liquor other than beer containing not more than 4% of alcohol by weight) be prohibited in this Village of Hinsdale." The result of the election as canvassed by the president and board of trustees of the village disclosed that 914 votes were cast in the affirmative and 456 votes were cast in the negative on the first proposition, and 853 votes were cast in the affirmative and 495 votes were cast in the negative on the second proposition.

On April 27, 1934, William F. Otto, Samuel Clineff, Albert E. Erickson, Albert Oemig and Otto Fleck filed

a petition in the county court of DuPage county, alleging that certain frauds and errors were committed in the conduct of said election and the count and canvass of the ballots and prayed that a recount be had under the order and direction of the court and that the court find and determine the true result of the election. This petition was verified as follows, viz.:

"State of Illinois, } ss.
County of DuPage, }

"William F. Otto, being first duly sworn on oath deposes and says that he is one of the petitioners in the above entitled cause and that as such he signed the above and foregoing petition: that he has read the foregoing petition and knows the contents thereof, and that all of the facts which are stated in said petition are true as therein charged, except as to the matters therein set forth upon information and belief, and as to such matters he believes them to be true.

William F. Otto.

"Subscribed and sworn to before me, this 26th day of April, A. D. 1934.

W. H. Johnson
(Seal)                                    Notary Public."

On June 25, 1934, by leave of court, an amendment to said petition was filed in which it was alleged that the petitions signed by the voters of the village of Hinsdale requesting the submission of said propositions to a vote were legally insufficient because of certain irregularities in the designation of the addresses of certain voters who signed said petitions and in the designation of the dates upon which they were signed. To this amendment the following affidavit was attached, viz.:

"State of Illinois, } ss.
County of DuPage, }

"William F. Otto, Samuel Clineff, Albert E. Erickson, Albert Oemig and Otto Fleck, each being first duly

sworn, on oath do each say that they have read the above and foregoing amendment to their original petition filed in the County Court of DuPage County, Illinois, and have also heard read the said original petition and know the contents of both, the said original petition and the above and foregoing amendment thereto and that the statements contained in the said original petition and the above and foregoing amendment thereto are true in substance and in fact as therein set forth.

William F. Otto
Samuel Clineff
Albert E. Erickson
Albert Oemig
Otto Fleck

"Subscribed and sworn to by each of the above named persons, namely, William F. Otto, Samuel Clineff, Albert E. Erickson, Albert Oemig and Otto Fleck, before me this 23rd day of June, A. D. 1934.

Ira D. Claxton.
(Seal)                                    Notary Public."

After a motion to dismiss the petition as amended had been overruled, the defendants answered, a hearing was had and on September 28, 1934, an order was entered finding that the petitions for the submission of each of said propositions to the voters of the village of Hinsdale were invalid and decreed that the election was null and void and of no legal force or effect whatever.

On October 25, 1934, the village of Hinsdale and Robert A. Peek, village clerk thereof, who were the defendants in the proceedings in the county court, filed their petition in the circuit court of DuPage county praying for a writ of certiorari to be directed to the county court of DuPage county and to Clarence G. Wagemann, county clerk thereof, commanding them to certify to said circuit court a transcript of the record

of the proceedings had in the county court. A writ of certiorari issued and the respondents thereto filed their return and upon motion, the circuit court quashed the writ of certiorari and from that order the record is brought to this court for review by appeal.

It is the contention of appellants that under the petition of April 27, 1934, the county court of DuPage county did not acquire jurisdiction to determine the result of the election of April 17, 1934, and that therefore the order of the county court holding the election invalid is null and void. In support of this contention appellants insist first that the original petition should have been verified by each of the five petitioners and that the verification thereof by William F. Otto is not sufficient to confer jurisdiction upon the county court. Second, that the verification is insufficient in that it recites that the facts which are stated in said petition are true and does not aver that the allegations therein are true. Third, that the petition itself was insufficient because none of the grounds of contest therein set forth is positively alleged, but is only alleged upon information and belief and is verified solely upon information and belief. Fourth, that under the statute the county court only had jurisdiction to contest the validity of the election and not the results of the election.

Section 17 of Article 9 of an Act relating to alcoholic liquors approved January 31, 1934, Ill. State Bar Stats. 1935, ch. 43, ¶ 90, provides: ''Any five legal voters of any political subdivision, district, precinct or group of precincts in which an election shall have been held as provided for in this Act may, within ten days after the canvass of the returns of such election and upon filing a bond for costs, contest the validity of such election by filing a verified petition in the County Court of the county in which such political subdivision, district, precinct or group of precincts is situated, setting forth

the grounds for the contest. Upon the filing of such petition a summons shall forthwith issue from such court addressed in cases of an election in a city, village or incorporated town, to the town, city or village clerk as the case may be; . . . The procedure in such cases shall be the same as that provided by law for the contesting of an election upon a subject which shall have been submitted to a vote of the people, so far as applicable. The County Court shall have the final jurisdiction to hear and determine the merits of such cases. Any legal voter in the political subdivision, district, precinct or group of precincts in which such election shall have been held may appear in person, or by attorney, in any such contested election case in defense of the validity of such election.''

It was by virtue of the foregoing provisions of the statute that the original petition in the county court was filed. This petition recited that the petitioners were at the time the petition was filed and had been for more than one year prior thereto legal voters, electors and citizens of the village of Hinsdale, DuPage county, Illinois; that on Tuesday, April 17, 1934, the propositions hereinbefore referred to were submitted to the voters of Hinsdale under the Act of January 31, 1934. The petition set forth the propositions and the form of the ballots that were used at the election and alleged that theretofore a petition had been filed in the office of the village clerk, petitioning the clerk to cause to be submitted, in the manner provided by law, said propositions; that both of the petitions were signed by a number of alleged residents of the village of Hinsdale; that on March 6, 1934, the president and board of trustees of the village by ordinance provided for said election to be held on April 17, 1934. The petition then alleged that at said purported election, an attempt was made to have the legal voters or electors of said village of Hinsdale vote on said propositions; that at the four

polling places certain judges and clerks of election were in attendance; that certain ballots were received in said polling places on said propositions to be voted "Yes" or "No"; that after the polls were closed a canvass of said ballots was attempted to be made by said judges and clerks of said polling places of the ballots cast at such polling place; that the judges of said polling places made returns of the number of votes cast for and the number of votes cast against said propositions, and that said returns from said polling places together with the poll books and ballots voted were thereafter sealed up by the judges and returned to the village clerk of said village of Hinsdale; that at said election in each of said polling places there was also submitted to the voters of said village the election of members of the board of trustees, the village clerk and two directors of the public library, and that the same judges and clerks of election attended to said election of said village officers and to the giving out and receiving of the special ballots of said propositions; that the canvassing board reached the result named by adding together the votes for "Yes" or "No" for each of said propositions, as the same were stated in the certificates of said judges of election in said polling places; that certain errors of said judges of election of said polling places entered into the result declared by the canvassing board, and that petitioners file said petition for the purpose of contesting said election on the following grounds:

"1. Petitioners represent that they are credibly informed and believe and on such information and belief state the facts to be that each of said propositions actually received and had cast more 'No', or in the negative, than were cast 'Yes' or in the affirmative; that said result would have appeared on the canvass of the returns of said canvassing board had it not been that many errors, omissions, and mistakes of the

judges and clerks of election of said four polling places in receiving, reading, counting, tallying and certifying votes cast as 'Yes' or in the affirmative of said propositions were entered on the tally sheets returned by said election judges and clerks, which with the poll books and certificates of election were turned in from said polling places as the true and correct votes cast, and as a result the canvass contained the said omissions and mistakes whereby the said proposition was declared carried.

"2. Petitioners represent that they are credibly informed and believe and on such information and belief state the facts to be that at said election in each of said polling places the judges and clerks of election failed to count a certain number of ballots marked 'No' or 'Yes', which ballots were cast for and should have been counted 'No' or the negative of said propositions; that in each of said polling places the judges and clerks counted ballots as 'Yes' or the affirmative of said propositions, which were cast for and should have been counted as 'No' or the negative of said propositions; that in each of said polling places the judges and clerks counted ballots as 'Yes' or the affirmative of said propositions which were not legally cast for said propositions; that the number of ballots so illegally and erroneously counted by said judges and clerks were more than 600 in number; that the said judges of said polling places failed to count over 75 ballots for either the affirmative or negative of said propositions, which ballots were cast for and should have been counted as 'No' or the negative of each of said propositions; that the judges of said election counted over 300 votes as 'Yes' or the affirmative of each of said propositions, which should have been counted as 'No' or for the negative of each of said propositions; that said judges counted over 300 votes as 'Yes' or for the affirmative of each of said propositions which were not

legally cast therefor; that said judges and clerks failed to count over 200 ballots which were marked with a cross in the square opposite the word 'No' in each of said propositions, and if the said illegal votes had not been counted for each of said propositions and if said votes which legally should have been counted as 'No', or in the negative of each of said propositions, then the negative of said propositions would have had and by right did have a majority of over 600 votes over the total votes legally cast as 'Yes' or for the affirmative of each of said propositions, and the votes cast as 'No' or for the negative of each of said propositions, were carried at said election by a majority of over 600 votes as a recount of said ballots will disclose.

"3. Your petitioners represent that they are credibly informed and believe and on such information and belief state the facts to be that the judges and clerks of each of said polling places in said Village of Hinsdale counted a large number of ballots, to-wit: 89 ballots, bearing on the face of said ballots distinguishing marks and which ballots were therefor by reason of said marks illegal and void and should not have been counted, but that all of said illegal ballots had crosses in the square opposite the word 'Yes' on said ballots and were counted as ballots cast for 'Yes' or for the affirmative of each of said propositions, and that 66 ballots were handed to voters and were voted by making a cross opposite the word 'Yes', which ballots did not bear the legal endorsement of any election judge, and which ballots were therefore void and should not have been counted, but that said ballots were counted as legal ballots cast for 'Yes' of each of said propositions; that in said polling places the judges and clerks of election illegally counted the ballots of election by dividing up into three piles the ballots cast, each election judge and clerk counting one pile, and one pile only, and then announcing the result obtained by the

count obtained from said one pile, and other judges and clerks doing likewise with each of their piles, and the total vote cast at said polling places was arrived at by adding the three sets of figures of each of said three piles, which action and count was contrary to the Statute, which provides that one judge shall read off the ballots, the other two judges watching said reading, and the tallying of said votes as read to be made on the tally sheets by each of said clerks; that by reason of said illegal method of counting said ballots in three piles by an election Judge and clerk for each pile, many errors, mistakes, frauds and omissions were made by said election judges and clerks, and thereby many ballots were counted as 'Yes' or for the affirmative of each of said propositions, which should not have been so counted.

"4. Your petitioners represent that they are credibly informed and believe and on such information and belief state the facts to be that gross frauds were permitted in said four election polling places in that residents at the sanitariums were permitted by said judges of election at said polling places of said Village of Hinsdale, to vote on each of said propositions, and that said residents were not legal voters or legal electors in said Village of Hinsdale and were not legally entitled to vote upon each of said propositions at said village election, but that said residents made a cross in the square opposite the word 'Yes' on each of said propositions and said ballots, to the number of 200, so marked were deposited in the ballot box and counted by the judges and clerks of said election, said votes being illegally cast and should not have been received or counted as 'Yes' votes.

"5. Your petitioners represent that they are credibly informed and believe and on such information and belief state the facts to be that the returns of said election made by the judges and clerks in each of said

polling places were incorrect and showed a less number of votes for the negative of each of said propositions than were cast at said election and showed more votes for the affirmative of said propositions than were cast at said election, which will more fully appear from a recount of the ballots cast at the four polling places.

"6. Your petitioners represent that they are credibly informed and believe and on such information and belief state the facts to be that all of said Act relating to alcoholic liquors or parts thereof, is unconstitutional, contra to the Statutes of the United States of America, and otherwise illegal and void and of no force and effect whatever, and also that the petition filed thereunder, the ballots, the statement of the propositions, the election, the canvass and returns of said election are illegal and void."

The petition prayed that the ballots be impounded, opened and recounted by order of the court, that the errors, omissions and frauds be corrected to show the true result of the election, that the resolution of the canvassing board be annulled and declared void and that the court find that each of said propositions had more crosses made in the square opposite the word "No" than there were crosses in the square opposite the word "Yes" and that the court would award such further and other relief as may be found proper.

The amendment to the petition which was filed on June 25, 1934, set forth 13 specific reasons why the several petitions which were signed by certain voters of the village and which petitioned the village authorities to cause to be submitted the propositions voted upon at the election held April 17, 1934, were insufficient, illegal and void. It is not necessary, however, that this amendment be further referred to as the single issue presented for determination upon this appeal is whether or not the county court acquired jurisdiction under the original petition to enter the

order which invalidated the election held under the provisions of the Illinois Liquor Control Act. In this proceeding we are not called upon to review the decision of the county court or to determine the facts upon which its decision rested. If the county court acquired jurisdiction under the original petition to enter the order it did, then the judgment of the circuit court was right. If the county court did not acquire jurisdiction under the original petition to enter the order which it did, then in this proceeding its record should be quashed.

The original petition that was filed in the county court charged that certain errors of the judges of the election entered into the result declared by the canvassing board, and stated that the petition was filed for the purpose of contesting said election on the several grounds thereafter alleged. All of the grounds alleged were stated upon information and belief and the prayer of the petition was that the ballots be recounted, that the errors be corrected, that the resolution of the canvassing board be declared void and that the court find that the result of the election was not what the canvassing board had declared it to be. From the petition and the prayer thereof, it is our opinion that this was a proceeding brought to contest the results of this election and not a proceeding to contest the validity thereof. As stated by counsel for appellant, a contest of the validity of an election and a contest of the result of an election deal with two separate, independent subjects. In a contest of the validity of an election the ultimate issue is whether or not the election was valid or invalid, irrespective of the result of the votes cast. A contest of the results of an election assumes that there has been a valid election, but that for various reasons the legal ballots cast were improperly counted or that the result reached by the canvassing board was erroneous. As stated in *Smith v.*

*Township High School District,* 335 Ill. 346, a proceeding to contest an election is to ascertain the true vote of the electors, and to determine and adjudge the proper result of the election from the legal ballots cast.

The Anti-Saloon Territory Act of 1907 provided for the creation of anti-saloon territory by popular vote and outlined the method by which a city, village or other political subdivision might become such and the manner of submitting such question to the voters of such political subdivision. Section 19 of that act (Hurd Rev. Stat. Ill., 1917, ch. 43, page 1230) provided as follows:

"Any five legal voters of any political subdivision in which an election shall have been held as provided for in this act, may, within ten days after the canvass of the returns of such election and upon filing a bond for costs, contest the validity of such election by filing a verified petition in the county court of the county in which such political subdivision is situated, setting forth the grounds for the contest. Upon the filing of such petition a summons shall forthwith issue from such court addressed in cases of an election in a town, city, or village, to the town, city, or village clerk as the case may be; and in other cases to the county board, notifying such clerk or board of the filing of such petition and directing him or it to appear in such court on behalf of such political subdivision at the time named in the summons, which time shall be not less than five nor more than fifteen days after the filing of such petition. The procedure in such cases shall be the same as that provided by law for the contesting of an election upon a subject which shall have been submitted to a vote of the people, so far as applicable. The county court shall have final jurisdiction to hear and determine the merits of such cases. Any legal voter in the political subdivision in which such election shall have been held may appear in person, or by attor-

ney, in any such contested election case in defense of the validity of such election.''

Section 17 of Article 9 of the Liquor Control Act of 1934, Ill. State Bar Stats. 1935, ch. 43, ¶ 90 (Smith-Hurd Rev. Stat. Ill., 1935, ch. 43, page 1426) is substantially a re-enactment of section 19 of the Anti-Saloon Territory Act of 1907. In *People v. Jenner,* 214 Ill. App. 321, it appeared that on April 2, 1918, the proposition whether the town of Mt. Pulaski should become anti-saloon territory was submitted to the voters of that town and it voted dry. On April 12, 1918, a petition was filed in the county court of Logan county to contest the validity of that election. The county court rendered judgment in that proceeding and thereafter a petition for certiorari was filed in the circuit court, resulting in a judgment quashing the record of the county court. The affidavit attached to the petition which was filed in the county court recited that the matters and things therein stated are true except as to such matters and things as are therein stated to be alleged upon information and belief, and as to such they believe them to be true. The court held the verification insufficient, stating that the statute under which the petition was filed required the filing of a verified petition and that a verification upon information and belief did not meet the requirements of the statute. The court also held that the county court was also without jurisdiction because no bond for costs was filed as required by the statute and affirmed the judgment of the circuit court.

In the instant case the petition was verified by an affidavit of William F. Otto, which recited that he had read the foregoing petition, knew the contents thereof and that all the facts stated in said petition are true as therein charged, except as to the matters therein set forth upon information and belief and as to such matters he believes them to be true. The petition to which

this verification was attached recited that the petitioners were legal voters and electors of the village and set forth the steps that had been taken preceding the passage of the election ordinance, averred that a purported election was held and stated the result thereof. The petition then charged that the judges of the election had made certain errors and that the petition was filed for the purpose of contesting said election upon the grounds stated in the six paragraphs hereinbefore set forth. Each of the several grounds is alleged merely upon the information and belief of the petitioners. The statute under which this proceeding was instituted does not authorize the petitioners to set forth the grounds for contesting the validity of such an election upon information and belief, but only by filing a verified petition setting forth the grounds for the contest. Furthermore, this petition makes some positive averments as distinguished from those averments alleged to be upon information and belief. As to these positive averments the verification is that William F. Otto signed said petition and has read and knows the contents thereof and that ''all of the facts which are stated in said petition are true as therein charged.'' Of course the facts are true. The petition represents, for instance, that the petitioners were legal voters, electors and citizens of Hinsdale, but the verification is not that this representation, averment or allegation is true, but is that if such representation is a fact and the petitioners are legal voters, electors and citizens of Hinsdale, then the verification says that fact is true. *Hovnanian v. Bedessern,* 63 Ill. App. 353.

Counsel for appellee in commenting upon the *Jenner* case, *supra,* say that its holding to the effect that the petition there considered was not properly verified is out of step with all the other cases on election contests and state that the reason certiorari was denied by the Supreme Court was that the decision was correct in holding that because no bond for costs was filed as

required by statute, the county court did not acquire jurisdiction. This may be true or it may not be true, but the cases which counsel for appellees cite to the effect that a verification upon information and belief is sufficient are election contest cases brought under section 117 of the General Election Law, Ill. State Bar Stats. 1935, ch. 46, ¶ 130 (Smith-Hurd Ill. Rev. Stat. 1935, ch. 46, page 1455) which provides that in the case of all public measures or subjects submitted to the voters of any village, any five electors of such village may contest the results of any such election by filing a written statement in the circuit court within 30 days after the result of an election shall have been determined in like form as in other cases of contested elections in the circuit court. Counsel for appellee particularly rely upon *Farrell v. Heiberg,* 262 Ill. 407. That case was one brought under the provisions of the General Election Act and the court said that to hold that a petition to contest an election should only contain such statements as were within contestant's own personal knowledge would be impracticable, since from the very nature of the proceeding the contestant must rely largely on information obtained from others and as to such information the contestant could only make oath that he believed the statements to be true and held that a verification upon information and belief was sufficient.

Counsel for appellee state in their argument that defective pleadings are one thing and a pleading so defective as not to vest jurisdiction of a cause in a court is quite another, and that conceding that the original petition which was filed in the county court was insufficient to vest the county court with jurisdiction, still by amendment that petition which was void was made valid. Counsel for appellee further argue that under the Civil Practice Act, amendments when made relate back to the filing of the original petition and when the amendment to the petition was filed on June 25,

1934, it became a part of the original petition filed on April 27, 1934, and is so to be treated and considered. The rule is, however, that where a petition to contest an election is properly verified and filed within the time prescribed by the statute and it sets forth one or more sufficient grounds of contest, amendments to the petition may be allowed, even after the expiration of the time within which the original petition was required to be filed, but where the original petition is not properly verified and does not set forth one or more sufficient grounds for contest, no amendments to the petition filed after the expiration of the time within which the original petition was required to be filed will confer jurisdiction. In other words a legally sufficient petition must be filed within the time prescribed by the statute in order to confer jurisdiction upon the court to thereafter hear and determine the cause. *Smith v. Township High School District,* 335 Ill. 346.

The statute under which the petitioners were proceeding in the county court required first, that a petition be filed in the county court of DuPage county; second, that this petition be filed by five legal voters of the village of Hinsdale; third, that such petition be verified; fourth, that a bond for costs be filed; fifth, that such petition and bond be filed within 10 days of the canvass of the returns of such election and sixth, that the petition shall set forth the grounds for contesting the validity of the election. These requirements were jurisdictional and unless complied with, the county court of DuPage county acquired no jurisdiction. *Daugherty v. Carmine,* 261 Ill. 366; *Armstrong v. Wilkinson,* 346 Ill. 322.

An examination of the abstract and also the record certified by the county court in obedience to the writ of certiorari fails to disclose that a bond for costs as required by the statute was filed. No argument has been presented to us urging this as a ground for the re-

versal of the judgment of the circuit court and we rest our decision upon the fact that the original petition was not properly verified. Whether, as contended by counsel for appellants the petition should have been verified by all five of the petitioners, it is not necessary to be determined as we are clearly of the opinion that the verification was defective and under the holding in the *Jenner* case, *supra,* the county court acquired no jurisdiction to enter the order invalidating the election therein referred to.

We are of the opinion that the purpose of the legislature in its enactment of section 17 of Article 9 of the Liquor Control Act, Ill. State Bar Stats. 1935, ch. 43, ¶ 90, was to afford an opportunity, speedily after the election, as in that act provided, for the determination of the validity of such election. The procedure there outlined was not theretofore permissible and there is nothing in any of the provisions of the liquor control law which takes away from any of the legal voters of Hinsdale the right to contest the result of this election under section 117 of the General Election law, Ill. State Bar Stats. 1935, ch. 46, ¶ 130. Authority to contest the validity of an election does not mean the same thing as authority to contest the results of an election. Validity is defined by Webster as that quality of a thing which renders it supportable in law or equity and Bouvier says it is legal sufficiency in contradistinction to mere irregularity. The original petition filed in the county court did not question the legal sufficiency of the election, but merely charged irregularities upon information and belief which the petitioners averred changed the result of the election. Under section 117 of the Elections Act, the municipality is designated as the proper defendant, while under the Liquor Control Act the village clerk is the appropriate defendant. Furthermore, under section 17 of the Liquor Control Act, the county court is given the final

jurisdiction to hear and determine the merits of such cases, while under the Elections Act an appeal from proceedings to contest an election are provided for and may be taken from the circuit court to the Supreme Court.

It was not until June 25, 1934, that an amendment was filed to the original petition, and in that amendment it was alleged for the first time that the petitions signed by the voters of the village of Hinsdale requesting the submission of said propositions to a vote were legally insufficient because of certain irregularities of the designation of the addresses of some of the voters who signed said petition and in the designation of the dates upon which they were signed. This was long after the 10 days which was the limit within which the petition was required under the statute to be filed. In our opinion the county court acquired no jurisdiction under the original petition and having acquired no jurisdiction, the order it entered was void.

The judgment of the circuit court of DuPage county is reversed and this cause is remanded with directions to enter an order quashing the record of the proceedings in the county court.

*Reversed and remanded with directions.*