SIXTH DIVISION

November 1, 2002

No. 1-02-1827

DEBORAH H. GRAHAM, 

Petitioner-Appellee,

v.

DOROTHY REID and DAVID ORR, as Cook County Clerk, One of the Local Election Authorities and Chairman of the Cook County Canvassing Board,  

Respondents-Appellants

(Robert L. Johnson, Edie Jacobs, Clara Halls, Norma L. French, Carrie Sercye, and Annie Sanders,

Additional Petitioners-Appellees;

________________________________________________

Chicago Board of Election Commissioners, and its Members as One of the Local Election Authorities, and The State Board of Elections, and its Members,

Respondents). 

)))))))))))))))))))))))

Appeal from the

Circuit Court of

Cook County

Honorable

RAYMOND JAGIELSKI

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

This case is a contest of the March 19, 2002, Democratic primary election for the office of representative in the Illinois General Assembly, 78th representative district.  
On June 24, 2002, the trial court declared the primary election void and
 ordered a new election to be held on September 10, 2002.  
The trial court's decision was based, in part, upon the United States Supreme Court decision in 
Bush v. Gore
, 531 U.S. 98, 148 L. Ed. 2d 388, 121 S. Ct. 525 (2000).  We allowed an expedited appeal pursuant to Supreme Court Rule 311 (155 Ill. 2d  R. 311).  On August 16, 2002, we entered an order with mandate to issue 
instanter
, stating that an opinion would follow. See, 
e.g.,
 
Pochie v. Cook County Officers Electoral Board,
 289 Ill. App. 3d  585, 587, 682 N.E.2d 258, 259 (1997).
  In that order, we reversed the judgment of the circuit court ordering a new election and remanded the matter for further proceedings.  As we shall explain, this opinion, which is substantively the same as this court's previous order, now
 supercedes and replaces our order dated August 16, 2002
. 
   

BACKGROUND

Four candidates ran in the 
Democratic primary election for the office of representative in the Illinois General Assembly, 78th representative district
.  The 78th representative district includes part of the City of Chicago (the City) and part of Cook County (the County) outside the City of Chicago.  The 78th district has 119 precincts.  The division of precincts between the County and the City is 71 precincts in Oak Park, Proviso and River Forest Townships and 48 precincts in the 29th, 36th and 37th wards of the City of Chicago.  The candidates in the election were 
respondent-appellant
 Dorothy Reid
, 
petitioner-appellee Deborah L. Graham, Jesus “Jesse” Martinez, and Ted E. Leverenz.
  The canvass of election results showed there was a tie between Reid and Graham, each having received 6,934 votes.  Candidate Ted Leverenz received 2,409 votes, and candidate Jesus Martinez received 2,231 votes.  As required by statute (10 ILCS 5/22-4 (West 1998)), the State Board of Elections broke the tie by lot, which fell in favor of Reid.

On April 17, 2002, Graham filed a petition for election contest, pursuant to section 7-63 of the Election Code (
10 ILCS 5/7-63
 (West 1998)), which provides that any candidate whose name appears upon the primary ballot of any political party may contest the election of an opposing candidate nominated for the same office by filing a written petition with the clerk of the circuit court within 10 days after the completion of the canvass of the final returns by the canvassing board. 10 ILCS 5/7-63 (West 1998).  In her petition, Graham alleged various errors in counting the ballots and requested the court to recount the ballots and declare Graham the winner.  Graham later filed a first amended petition for election contest and named as respondents Reid, the Chicago Board of Election Commissioners, the Cook County clerk, the Cook County canvassing board, and the State Board of Elections.  Reid then filed a counterclaim, within five days as required by section 7-63 
(10 ILCS 5/7-63) (West 1998)) in which she alleged that Reid had in fact won the election, but that there were other errors in the ballot counting which would actually increase her margin of victory.

On April 30, 2002, the circuit court entered an agreed order providing that the election authorities would conduct the recount and establish how the recount would be conducted.  The order also provided that the parties were excused from filing formal answers to each other's pleadings, that the parties were authorized to liberally amend their complaint or counterclaim as new facts were discovered in the recount, and that they would be deemed to deny each other's allegations.

On May 29, 2002, the Chicago Board of Election Commissioners and the Cook County clerk filed the precinct-by-precinct results of the court-ordered recount.  One precinct, the 24th precinct of the 37th ward in Chicago, did not report results because the ballots had not been located.  On the same day, an agreed order was entered allowing the parties to file amended pleadings.  Graham was granted until May 30, 2002, to file pleadings; Reid was allowed time to file a response or counterclaim until June 6, 2002.

On May 30, 2002, Graham filed a second amended verified complaint for election contest in which she restated the basic allegations and prayers for relief contained in her previous petitions.  In addition, citing 
Bush v. Gore
, 531 U.S. 98,
 148 L. Ed. 2d 388, 121 S. Ct. 525 (2000)
, Graham claimed that she and other voters were denied their constitutional right to vote based upon 
irregularities discovered during the recount
.  These irregularities included missing ballots from an entire precinct, namely, the 24th precinct of the 37th ward, and incorrect ballots being given to voters in split precincts.  Split precincts were those in which some of the voters lived in the 78th district and others lived in another representative district, thus requiring the issuance of different ballots to each group of voters.  Graham thus sought, for the first time, a new election in the 78th district or, at a minimum, a new election in those precincts which contain split representative districts and in the precinct in which ballots were missing.

On June 4, 2002, Graham filed a pleading entitled “Motion for a New Election” which contained similar allegations as the 
second amended verified complaint for election contest
 and similar references to the fundamental right to vote and requested that 
“before the court begins the task of deciding the candidates' fate, ballot by ballot,”
 it consider ordering a special election to be held within 30 days.  The motion for a new election was noticed up on an emergency basis.

On June 4, 2002, Reid filed a motion, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2000)) to strike count III of Graham's second amended verified petition for election contest.  Reid also filed a motion to strike certain paragraphs of exhibit B of 
the second amended verified complaint for election contest.  Ex
hibit B, entitled “Verified and Specified Grounds of Contest,” was a list of alleged errors and/or omissions discovered by Graham “
after due investigation independent of the discovery recounts and concluding the discovery recounts.”
  Reid also filed a response to Graham's motion for a new election in which she argued, among other things, that the court had no authority to grant the relief requested.

On June 10, 2002, Graham filed a “Motion to Amend Petition to Add Count Relative to Voters” 
which was accompanied by the affidavits of these voters.  In this motion, Graham argued that six voters who allegedly wanted to vote for Graham could not do so because her name was not on the ballot book in the booth they were in, and also that election judges failed to give voters in the 78th district the correct ballot, namely, a type “A” ballot.
  In this motion, Graham requested that these six voters “be added as additional petitioners as to Count III of the Second Amended Petition and leave be granted to file a Third Amended Petition to include the allegations contained in this Motion.”

On June 14, 2002, Graham filed a third amended petition for a new election.  On June 20, 2002, Reid filed an amended counterclaim setting forth various irregularities, allegedly favorable to Reid, which were found at the court-ordered recount, as well as allegations of vote fraud in the 29th ward of Chicago.  Reid also filed the following three motions: (1) to dismiss the claims of the six voters on the basis that there was no private right of action under section 7-63 of the Election Code (10 ILCS 5/7-63)(West 1998)); (2) to dismiss the claim that missing ballots should require a new election; and (3) to strike the federal constitutional claims in the third amended petition because they failed to state a cause of action under applicable federal law, such as section 1983 of the federal Civil Rights Act (42 U.S.C. §1983)(1994).  Reid also filed affirmative defenses.

On June 24, 2002, the trial court heard arguments on Reid's pending motions and summarily denied all of them.  Thereafter, on the same day, the court conducted an evidentiary hearing on the claims in the third amended petition for election contest which were the subject of the motion for a new election.  
The six voter-petitioners did not testify at trial, nor were their affidavits ever offered into evidence.  
The only witness to testify was Robert Sawicki, assistant executive director of the Chicago Board of Election Commissioners.  At the conclusion of his testimony, both sides rested.  The trial court then declared the primary election void, based upon the equal protection doctrines voiced in 
Bush v. Gore
, granted Graham's “Motion for a New Election,” and ordered the new election to be held on September 10, 2002.  The court also declared that this disposition rendered moot all remaining issues in the case.

On July 1, 2002, Reid filed a timely appeal in which she sought reversal of the circuit court's order granting a new election, as well as reversal of the denial of her various motions.
  On July 2, 2002, we granted a motion to expedite the appeal.  Briefs and the record were filed on an expedited basis.  On August 6, 2002, Graham filed a motion to strike the brief of appellant David Orr or, in the alternative, to strike the exhibits attached thereto.  The motion was taken with the case.
(footnote: 1)  Oral arguments were heard 
on August 15, 2002.

ANALYSIS

This is a case of first impression in Illinois.  One of the issues before us is whether the United States Supreme Court decision in 
Bush v. Gore
, 531 U.S. 98, 148 L. Ed. 2d 388, 121 S. Ct. 525 (2000), overruled the Illinois Supreme Court's decision in 
McDunn v. Williams
, 156 Ill. 2d 288, 620 N.E.2d 385 (1993).  We hold that it did not.

It is undisputed that
 the ballots were missing from one of the precincts
.  The trial court concluded that 
conducting a recount pursuant to the Illinois Supreme Court's decision in 
McDunn v. Williams
, 156 Ill. 2d 288, 620 N.E.2d 385 (1993)
, which 
addressed the issue of missing ballots and which holds that the returns are 
prima facie
 evidence of the results,
 would not satisfy minimum requirements for nonarbitrary treatment of the voters necessary to secure the fundamental right of equal protection enunciated by 
Bush v. Gore,
 531 U.S. 98, 148 L. Ed. 2d 388, 121 S. Ct. 525 (2000)
.
  
Bush v. Gore
 
stands for the proposition that because there were no explicit statewide standards governing the manual tabulation of votes in Florida, votes would be counted differently in different parts of the state, which would effectively result in an impermissible denial of the right to an equal vote.  
Bush v. Gore
 is distinguishable not only because it was expressly limited to the circumstances of that case, but because Illinois has long-established standards regarding recounts, which have been codified and which have also been made clear by the Illinois Supreme Court decisions of 
Pullen v. Mulligan
, 138 Ill. 2d 21, 561 N.E.2d 585 (1990), and 
McDunn v. Williams
, 156 Ill. 2d 288, 620 N.E.2d 385 (1993).

With respect to
 the standard to be followed in the case of missing ballots, the Illinois Supreme Court has
 pronounced as follows:

“The law has long been:

'The returns of the election officials are 
prima facie
 evidence of the result of the election. The ballots, however, are the original evidence of the votes cast. In an election contest, the court may accept the ballots cast at the election as better evidence of the result than the election returns if those ballots have been properly preserved. [Citations.]' ”
McDunn v. Williams
, 
156 Ill. 2d at 321, 620 N.E.2d at 402, quoting 
Pullen v. Mulligan
, 138 Ill. 2d  21, 72, 561 N.E.2d 585 (1990).

This statewide standard
 - that 
the returns are 
prima facie
 evidence of the results
 when the ballots in a precinct are missing -
 is a uniform standard applied to all precincts.  Although the particular 
facts
 may change from election to election, 
i.e.
, ballots may or may not be missing from one or more precincts, the standard does not change.  
That one or more precincts may have missing ballots does not mean a different “standard” is applied.  Similarly, if only one or more precincts have ballots with chads while other precincts have ballots with complete punches, that does not mean a different “standard” is applied to the precincts with chads.  We do not read 
Bush v. Gore
 to now require that, any time a recount is ordered and ballots are missing,
 a new election must be held.
  We conclude that the state law protections, both statutory and as established by Illinois Supreme Court case law, are sufficient and do not violate the fundamental right to vote.  Thus, the trial court should have completed the recount process pursuant to section 7-63. 
10 ILCS 5/7-63 (West 1998).

We next address the argument related to the alleged irregularities in the split precincts
.
  Graham contends that eligible voters were denied the right to vote and voters who did cast ballots did not have their votes counted because they were given the wrong ballot style in the split precincts.  Reid takes issue with the evidence before this court and 
argues that this court cannot consider the affidavits of the six voter-petitioners because they were never made a part of the record below.  Assuming 
arguendo
 that the affidavits of the six voters are before this court, they merely establish that these six voters entered voting booths which contained the wrong ballot book, 
i.e.
, a ballot book that did not have the name of Graham or the other 78th district candidates listed.  There is, however, no statement in the affidavits (each one avers the same facts) nor any evidence that these voters were 
intentionally
 given the wrong ballot book, asked for or were refused the correct ballot book upon request, or were intentionally denied the right to vote for the candidate of their choice.

As Reid correctly notes, the petitioners did not bring a claim for a violation of rights guaranteed under the United States Constitution
 and did not invoke section 1983 of the federal Civil Rights Act (42 U.S.C. §1983
 (1994), which provides, in relevant part, as follows:

“Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State *** subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.” 42 U.S.C. §1983 (1994).

To state a cause of action for municipal liability under section 1983, our supreme court has explained that “plaintiffs must establish (1) that they have suffered the deprivation of a constitutionally protected interest, and (2) that the deprivation was caused by an official policy, custom, or usage of the municipality.”
 
Doe v. Calumet City
, 161 Ill. 2d  374, 402, 641 N.E.2d 498 (1994).  The official policy, custom or usage at issue must be the “moving force” behind the deprivation of a federal right. 
Doe
, 161 Ill. 2d at 401, 641 N.E.2d at 511.

Even if petitioners had invoked section 1983, they failed to allege any constitutional violations that were the result of an official custom or policy, nor was there any evidence whatsoever of any official custom or policy.  The petitioners did not allege that election authorities intentionally violated any of their rights.  Instead, the allegations regarding the irregularities in the split precincts, at most, merely hinted at negligence.  There is a distinction between "garden variety" election irregularities and a pervasive error that undermines the integrity of the vote
.  See, 
e.g.
, 
Bodine v. Elkhart County Election Board
, 788 F.2d 1270, 1272 (7th Cir. 1986) (where there was both mechanical error and human error in counting votes)
.  Regardless of the effect such actions have on the outcome of an election,
 allegations of negligence or incompetence regarding election procedures are insufficient to state a claim 
under section 1983 of the federal Civil Rights Act. 
Bodine
, 788 F.2d at 1272
.  Here, even if petitioners had claimed such a federal constitutional violation,
 the alleged errors were, at most, mere “garden variety” election irregularities.

Illinois has established statewide standards for discerning voter intent
.
  State
 law protections, particularly those governing the situation of the missing ballots, are sufficient and do not violate the fundamental right to vote.
  Additionally, in
 the split precincts, t
he irregularities with regard to the different ballot types were “
garden variety” election irregularities
 which showed, at best, an inference that some voters may have not had their votes counted due to negligence, inadvertence or mistakes on the part of the election judges and/or the voters.
  
Split precincts are not unconstitutional in general, nor were they unconstitutional as applied here.  We now conclude that there was no evidence of any systematic disenfranchisement of the voters nor any constitutional violation that would justify a new election.
  We hold that
 the circuit court erred in ordering a new election and should have instead completed the recount process pursuant to section 7-63 of the Election Code. 
10 ILCS 5/7-63 (West 1998).
  

In accordance with the foregoing, we reverse the judgment of the circuit court and remand the case for further proceedings consistent with this opinion and with directions to the trial court to complete the recount process.  In addition, the trial 
court, pursuant to section 7-63
 of the Election Code governing primary election contests, “
shall
 ascertain and declare by a judgment to be entered of record, the result of [the] election” at issue, 
the March 19, 2002, Democratic primary election for the office of representative in the Illinois General Assembly, 78th representative district
. (Emphasis added.)10 ILCS 5/7-63 (West 1998).
  
  The order for a new election is vacated.  In view of our decision, we need not address Reid's request that we reverse the circuit court's denial of her various motions.  In addition, because our opinion is substantially the same as our previously issued order, but for a slightly expanded recitation of the facts and a somewhat
 more detailed explanation of our analysis, we now withdraw the Rule 23 (166 Ill. 2d R. 23) order of August 16, 2002, and issue this opinion for publication effective August 16, 2002.

Reversed and remanded.

O'BRIEN, P.J., and BUCKLEY, J., concur.

FOOTNOTES
1: We now deny that motion as moot
 and note that our opinion was based solely upon the arguments of Graham and Reid.