BRUCE ANDREWS, Plaintiff-Appellant, v. RICHARD "PETE" POWELL *et al.*, Defendants-Appellees.

Fourth District    No. 4—05—0726

Argued March 22, 2006.—Opinion filed May 5, 2006.

514

Robert G. Day, Jr. (argued), of Law Offices of Day & Day, of Peoria, for appellant.

Samuel J. Cahnman (argued), of Springfield, for appellee Richard Powell.

David J. Ryan, of Dukes, Ryan, Meyer, Fahey, Freed & Goodwin, Ltd., of Danville, for appellee Danville Board of Election Commissioners.

JUSTICE APPLETON delivered the opinion of the court:

On July 27, 2005, the Vermilion County circuit court granted defendant Richard Powell's motion to dismiss plaintiff Bruce Andrews's verified petition for election contest and recount. The court also denied Andrews's two motions to amend his petition and his motion for a recount on the pleadings. Andrews appeals the court's ruling as to each of the four motions. We affirm the dismissal of the petition for an election contest but reverse the dismissal of the petition for a recount.

## I. BACKGROUND

Andrews filed suit against defendants, the Vermilion County clerk, members of the Danville Board of Election Commissioners (Board), members of the Newell Township Canvassing Board, and Powell, to contest the election for Newell Township highway commissioner. The

election was held in Vermilion County on April 5, 2005. Andrews ran against Powell and was defeated by 8 votes, 1,113 votes to 1,105 votes. These votes came from a total of 18 different precincts: 14 within the City of Danville (Danville precincts) and 4 within Vermilion County, outside the City of Danville (Vermilion County precincts).

Andrews exercised his right under section 22—9.1 of the Illinois Election Code (Code) to a discovery recount of not more than 25% of the precincts within Danville and Vermilion County. 10 ILCS 5/22—9.1 (West 2004) (stating that candidates receiving at least 95% of the number of votes cast for a successful candidate for the same office may file a petition for discovery). On May 9, 2005, the Board conducted the discovery recount in 3 of the 14 Danville precincts and in 1 of the 4 county precincts. See 10 ILCS 5/22—9.1(b) (West 2004) ("ballots *** shall be counted in specified precincts, not exceeding 25% of the total number of precincts within the jurisdiction of the election authority"). The record does not contain the exact results of the discovery recount in terms of the number of votes counted for each candidate in each respective precinct.

On May 19, 2005, Andrews filed a verified petition for election contest and recount. See 10 ILCS 5/23—20 (West 2004). The petition alleged the following improprieties in one or more of the precincts subject to the discovery recount: (1) two ballots with votes for Powell were not initialed by an election judge, as required by section 24A—10.1 of the Code, and were improperly counted for Powell (see 10 ILCS 5/24A—10.1 (West 2004)); (2) 123 unvoted ballots were missing from the fourth precinct; (3) the Board and county clerk violated section 24B—9 of the Code (10 ILCS 5/24B—9 (West 2004)) in that they failed to conduct a pretest of the voting-tabulation equipment; (4) the Board and the county clerk violated section 24B—10.1 of the Code (10 ILCS 5/24B—10.1 (West 2004)) in that, after the close of the polls, they failed to properly seal the ballots cast in the precinct polling places; and (5) Newell Township registered voters in the three Danville precincts were given a preprinted application that directed poll workers to give the voters Blount Township, rather than Newell Township, ballots. (Blount Township voters in turn had voter applications that directed poll workers to give them Newell Township ballots.) Apparently, the three Danville precincts were "split precincts," where some voters belonged to Newell Township and others belonged to Blount Township. Newell Township registered voter Lisa Askins stated, in an affidavit attached to Andrews's petition, that she was improperly given a Blount Township ballot when she went to the polls; that, as a consequence, she was unable to vote for Andrews for Newell Township highway commissioner; and that she had in fact intended to vote for Andrews if given the opportunity.

Andrews alleged, in his petition, that based on information from the discovery recount, the vote-count difference between himself and Powell had decreased from 8 votes to 5 votes and, thus, there was a "reasonable likelihood" that a recount of all 18 precincts would change the result of the election. Andrews also alleged that the additional improprieties called the integrity of the election into question, regardless of their impact on election results. Andrews requested that the court order (1) a full recount of the ballots cast in all 18 precincts and (2) an examination of the relevant voting devices, ballots, precinct binder cards, and voters' affidavits. Andrews also requested an order declaring himself to be the elected Newell County highway commissioner. On May 20, 2005, Powell was served a summons in this case, and copies of the petition were mailed to defendants.

On June 15, 2005, after the 30-day statute of limitations had passed (10 ILCS 5/23—20 (West 2004)), Andrews filed a motion for leave to amend his petition. The proposed amendment sought to add the affidavit of Graham Peck, a Newell Township registered voter. Graham attested he had intended to vote for Andrews but that the absentee ballot he was given did not list Andrews as a candidate. Graham turned in his ballot. However, after talking with his father, who shared the same address and who (unlike Graham) had been given a ballot with Andrews's name on it, Graham realized he may have been given the wrong ballot. Graham called the Board to ask if he had been given the wrong ballot, but the Board informed him he had been given the correct ballot.

On June 16, 2005, the Board filed an answer to Andrews's petition. The Board admitted that two ballots were not properly initialed by election judges and that preprinted applications in the three split precincts contained improper ballot-style designations. However, the Board stated it did not have sufficient knowledge to determine whether any voter actually voted on the wrong ballot due to the incorrect designations. The Board, therefore, denied Andrews's allegation to that effect.

Powell declined to answer Andrews's petition and, on June 21, 2005, filed a motion to dismiss it pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2004)). On June 22, 2005, Andrews filed a motion for recount on the pleadings pursuant to section 23—23.2 of the Code (10 ILCS 5/23—23.2 (West 2004)). Andrews filed a response to Powell's motion to dismiss on July 7, 2005.

At a hearing on July 27, 2005, the trial court denied Andrews's motion to amend the petition (filed June 15, 2005), denied Andrews's motion for a recount on the pleadings, and granted Powell's motion to dismiss the petition for failure to state a cause of action. Andrews's at-

torney then made an oral motion for leave to amend the petition, and the court denied this motion as well.

This appeal followed.

## II. ANALYSIS

### A. Legal Sufficiency of the Petition

■ Andrews argues on appeal that the trial court erred in finding the petition insufficient to contest the results of the election. Andrews also argues that the court erred in dismissing his petition, because the petition alleged facts that, if shown to be true, would be grounds for invalidating the election. We review *de novo* a motion to dismiss for failure to state a cause of action. *Krauss v. Board of Election Commissioners*, 287 Ill. App. 3d 981, 983, 681 N.E.2d 514, 515 (1997).

■ An action to contest the results of an election is not the same as an action to contest the validity of an election. *Ross v. Kozubowski*, 182 Ill. App. 3d 687, 694, 538 N.E.2d 623, 628 (1989). An action to contest the validity of an election centers upon whether the election was valid or invalid, irrespective of the result of the votes cast. *Ross*, 182 Ill. App. 3d at 694, 538 N.E.2d at 628, citing *Village of Hinsdale v. County Court*, 281 Ill. App. 571 (1935). Accordingly, we will perform two separate analyses in determining the sufficiency of the petition.

### 1. *Sufficiency of the Petition Contesting Results*

#### a. Standard by Which Sufficiency Is Measured

■ The parties debate the appropriate standard to be used in determining the legal sufficiency of the petition for recount. Andrews contends that the petition conforms to sections 23—20 and 23—23.2 of the Code (10 ILCS 5/23—20, 23—23.2 (West 2004)) and is, therefore, sufficient. Section 23—20 governs petitions for election contests for offices other than statewide offices and requires specificity in the pleadings. 10 ILCS 5/23—20 (West 2004). Section 23—23.2 states as follows:

> "A court hearing an election contest pursuant to this [a]rticle or any other provision of the law shall grant a petition for a recount properly filed where, based on the facts alleged in such petition, there appears a *reasonable likelihood* the recount will change the results of the election." (Emphasis added.) 10 ILCS 5/23—23.2 (West 2004).

Though perfunctorily stating that the standard in section 23—23.2 controls, Powell substantively argues that case law requires the petition to allege that a recount *would in fact change* the results of the election. *Hoffer v. School District U-46*, 273 Ill. App. 3d 49, 58, 652 N.E.2d 359, 365 (1995). Hence, the question becomes, what does "reasonable likelihood" mean?

Prior to the enactment of section 23—23.2 in 1986, common law mandated that an election-contest petition contain a positive and clear assertion, allegation, or claim that a vote recount would in fact change the result of the election. *In re Contest of the Election for the Offices of Governor & Lieutenant Governor Held at the General Election on November 2, 1982*, 93 Ill. 2d 463, 491, 444 N.E.2d 170, 183 (1983) (hereinafter *In re Contest*); *Zahray v. Emricson*, 25 Ill. 2d 121, 124, 182 N.E.2d 756, 758 (1962). These seminal cases also indicated that, absent a direct allegation that a recount would in fact change the result of the election, courts would consider petitions that alleged facts showing such a result. *In re Contest*, 93 Ill. 2d at 491, 444 N.E.2d at 183; *Zahray*, 25 Ill. 2d at 125, 182 N.E.2d at 758.

Since the enactment of section 23—23.2 in 1986, appellate courts have struggled to reconcile the old common-law rule that the petition contain an assertion that a recount would in fact change the result of the election with the new statutory rule that a court should grant a recount if the petition alleged facts demonstrating a "reasonable likelihood" that the recount would change the result of the election. 10 ILCS 5/23—23.2 (West 2004). Since 1986, four appellate decisions have touched on the issue: *Gribble v. Willeford*, 190 Ill. App. 3d 610, 614-16, 546 N.E.2d 994, 997-98 (1989); *O'Neal v. Shaw*, 248 Ill. App. 3d 632, 634, 639, 618 N.E.2d 780, 782-83, 786 (1993); *Hoffer*, 273 Ill. App. 3d at 58, 652 N.E.2d at 365; and *DeFabio v. Gummersheimer*, 307 Ill. App. 3d 381, 386, 717 N.E.2d 540, 544 (1999), *aff'd*, 192 Ill. 2d 63, 733 N.E.2d 1241 (2000) (supreme court did not address legal-sufficiency issue).

Of the four opinions, only *Gribble* directly asserts that section 23—23.2 alone is the appropriate standard for measuring the legal sufficiency of the petition. *Gribble*, 190 Ill. App. 3d at 615-16, 546 N.E.2d at 997-98, quoting Ill. Rev. Stat. 1985, ch. 46, par. 23—23.2 (after a discussion of the old *In re Contest* standard, states: " '[A] reasonable likelihood the recount will change the results of the election' *** is the standard against which we must *** determine whether [the] petition was legally sufficient"). However, even *Gribble* ultimately merges the two standards in its reasoning:

> "Since [petitioner] made positive assertions that a recount *** *would change* the result of the election, and this *likelihood was reasonable* ***, the allegations in the petition were legally sufficient under section 23—3.2 ***." (Emphases added.) *Gribble*, 190 Ill. App. 3d at 616, 546 N.E.2d at 998.

The standards set forth in *O'Neal* and *DeFabio* are equally uncertain; in point of fact, each candidate cites the two cases in support of his preferred standard. The problem with *Gribble*, as with the other

aforementioned appellate opinions, is that each relevant petition passes both the section 23—23.2 standard and the older, more stringent common-law standard. Only the instant case presents a factual situation in which the petition might arguably pass the more liberal section 23—23.2 standard yet fail the stricter common-law standard.

The court in *Hoffer* finds the two standards to be one and the same. *Hoffer*, 273 Ill. App. 3d at 58, 652 N.E.2d at 365 ("we interpret [the reasonable-likelihood] standard to mean that, at a minimum, the specific irregularities alleged in the petition *would* be sufficient to change the result" (emphasis added)). For the reasons that follow, we disagree with *Hoffer* in that respect. For one, the *Hoffer* standard defies a plain-meaning interpretation of the phrase "reasonable likelihood." Further, *Hoffer* improperly relied upon *In re Contest* when it found that section 23—23.2 did not "contravene the pleading requirements as announced in *Zahray* and *In re Contest*." *Hoffer*, 273 Ill. App. 3d at 56, 652 N.E.2d at 363. *Hoffer* cites *In re Contest* for the proposition that "a statute should not be construed to effect a change in the settled [case-]law of the State unless its terms clearly require such a construction." *Hoffer*, 273 Ill. App. 3d at 56, 652 N.E.2d at 363, citing *In re Contest*, 93 Ill. 2d at 483, 444 N.E.2d at 179. We find, however, that while the above-cited principle was applicable to the 1983 *In re Contest* case, it was no longer applicable in 1995 in *Hoffer*. When the court in *In re Contest* found that "nothing in the language of the statute *** clearly requir[ed], or even indicat[ed]" that the strict-pleading requirements of *Zahray* should not apply, section 23—23.2 was not yet enacted. *In re Contest*, 93 Ill. 2d at 483, 444 N.E.2d at 179. Prior to the enactment of section 23—23.2, the strict, common-law pleading standard merely conformed to existing legislation requiring that allegations of fraud, *et cetera*, be pleaded with factual specificity (*i.e.*, sections 23—1.2 and 23—20). In contrast, the strict, common-law pleading standard cannot logically be read in conjunction with section 23—23.2; each clearly states a completely different pleading standard.

■ In sum, unless our supreme court holds otherwise, a petition's failure to state or allege facts to show that the result of the election would in fact be different is not an absolute bar to further hearing.

### b. Whether Andrews Alleged a "Reasonable Likelihood" That a Recount Would Change Results of the Election

#### 1. *Failure To Initial Two Ballots*

Andrews claimed that there was a reasonable likelihood that a recount would change the results of the election because two ballots

containing a vote for Powell were improperly counted in that they lacked the initials of an election judge.

■ It is well established that the requirement incumbent upon election judges to initial voted ballots is mandatory and not discretionary. *Snow v. Natzke*, 140 Ill. App. 3d 367, 369, 488 N.E.2d 1077, 1078 (1986), *overruled on other grounds*, *Bazydlo v. Volant*, 164 Ill. 2d 207, 213, 647 N.E.2d 273, 276 (1995); *Craig v. Peterson*, 39 Ill. 2d 191, 194, 233 N.E.2d 345, 347 (1968). By corollary, it is well established that ballots that have *not* been initialed by an election judge are not to be counted in the tabulation of the results. *Snow*, 140 Ill. App. 3d at 369, 488 N.E.2d at 1078. Through the discovery recount process, a total of two votes for Powell were eliminated from his vote total, resulting in a postdiscovery recount reduction of 25% in his electoral majority.

■ The law and practice that has developed concerning discovery recounts and recount petitions provides that the results of the discovery recount are to be mathematically extrapolated to interpret whether the facts discovered during the discovery stage are significant. See *Cummings v. Marcin*, 16 Ill. App. 3d 18, 22, 305 N.E.2d 606, 609 (1973). Here, such a process, standing alone, would result in a tie between the candidates. Using a proportional analysis, it is clear that the facts adduced during the discovery recount establish, for the purposes of the recount petition, a reasonable likelihood that the results of the election would change.

### 2. *Distribution of the Incorrect Ballot Type*

The trial court had before it two voter affidavits that averred that the election authority distributed to them a ballot for the road commissioner election in Blount, rather than Newell, Township. Although the trial court did not consider the second affidavit, for purposes of our discussion we will consider both affidavits. Doing so, however, does not affect the disposition of the petition for an election recount.

In the instant case, neither Askins nor Peck *actually* voted for Andrews. In fact, none of the allegedly misdirected Newell Township voters actually voted for either Andrews *or* Powell. Needless to say, Andrews cannot make the legal argument that a recount would be reasonably likely to lead to a change in results based on the *intended* votes of registered voters. Therefore, we interpret Andrews's allegations pertaining to the misdirected voters to be an argument in support of a proportionate reduction in votes. Andrews seems to propose this analysis in his response to Powell's motion to dismiss, filed July 7, 2005. Andrews essentially wishes to apply a proportionate reduction of votes in each of the three split precincts, arguing that this reduction is reasonably likely to change the results of the election. See *Jordan v.*

*Officer*, 170 Ill. App. 3d 776, 789, 525 N.E.2d 1067, 1075 (1988) (illegal votes must be apportioned in a ratio of each candidate's vote at a given precinct and reduced proportionately from the candidate's vote totals). This process prevents the disenfranchisement of legitimate voters. *Webb v. Benton Consolidated High School District No. 103, Franklin County*, 130 Ill. App. 2d 824, 826, 264 N.E.2d 415, 418 (1970). Here, the petition, as well as Peck's affidavit, implies that some Newell Township voters in the split precincts did receive the proper ballot. If the illegality of votes cast does not affect the vote of the entire precinct, the burden of proving for whom the illegal votes were cast, and that they were sufficient in number to change the results of the election, falls on the petitioner. *Jordan*, 170 Ill. App. 3d at 788, 525 N.E.2d at 1074.

In the present case, Andrews does not sufficiently plead that a proportionate reduction in votes would likely change the result of the election. Andrews did not make any allegations as to how many voters received the wrong ballot. He merely stated "it is highly likely that some other Newell Township voters besides Lisa Askins were given Blount Township ballots." Andrews did not allege how many voters voted (either legitimately or illegitimately) for him and Powell, respectively, in each of the split precincts. How many Newell Township voters received Blount Township ballots? How many Blount Township voters received Newell Township ballots? What were the total votes received for each candidate? Without this information, any sort of proportional adjustment of votes would be based on speculation.

Moreover, absent further investigation, we are not certain that it is even appropriate to consider the allegation of misdirected voters in the context of a petition to contest results. If it is impossible to ascertain the number of legal and illegal votes (in this case, the number of Blount Township voters given Newell Township ballots and the number of Newell Township voters given Blount Township ballots), the rule of apportionment is inapplicable, and the question instead becomes whether to void the election. *Jordan*, 170 Ill. App. 3d at 788, 525 N.E.2d at 1074. Accordingly, we will face this issue again when we discuss the election's validity.

### 3. *Sufficiency of the Petition Contesting Validity*

As Powell notes, errors or omissions by election officials in carrying out the duties imposed by the Code can cause an election to be invalidated. *Hester v. Kamykowski*, 13 Ill. 2d 481, 484-85, 150 N.E.2d 196, 199 (1958). Invalidating an election is, however, an extremely drastic measure, and we must distinguish between garden-variety

election irregularities and those errors that are so pervasive as to undermine the integrity of the vote. *Graham v. Reid*, 334 Ill. App. 3d 1017, 1024, 779 N.E.2d 391, 396-97 (2002).

Andrews contends that four provisions of the Code were violated, thereby invalidating the election: (1) failure to perform a pretest of tabulation technology (10 ILCS 5/24A—9, 24B—9 (West 2004)); (2) 123 unvoted ballots were missing from the election materials (10 ILCS 5/24A—10.1, 24B—10.1 (West 2004)); (3) failure to seal ballots in sealed containers with filament tape (10 ILCS 5/24A—10.1, 24B—10.1 (West 2004)); and (4) ballots that were not initialed by a judge were improperly counted (10 ILCS 5/24A—10.1, 24B—10.1 (West 2004)). As stated above, we find that Andrews's contention regarding misdirected voters also speaks to the validity of the election.

■ His first three contentions lack merit. Absent an accompanying allegation of fraud, petitions that allege only violations of directory, rather than mandatory, provisions are subject to dismissal. *Goree v. LaVelle*, 169 Ill. App. 3d 696, 700, 523 N.E.2d 1078, 1081 (1988); *Foster v. Chicago Board of Election Commissioners*, 176 Ill. App. 3d 776, 779, 531 N.E.2d 920, 922 (1988). When a statute specifies what result or penalty will ensue for failing to comply with its provisions, it will be construed as mandatory rather than directory. *Marquez v. Aurora Board of Election Commissioners*, 357 Ill. App. 3d 187, 192, 828 N.E.2d 877, 881 (2005). The rule is different when the statute specifies no penalty:

> " ' "[M]ere technical statutory duties relating to elections [generally] will, after the election, be held to be directory only and a failure to comply therewith will not invalidate the election if such failure does not affect the fairness or merits thereof, nor obstruct nor prevent a free and intelligent vote of the people and ascertainment of the result." ' " *Foster*, 176 Ill. App. 3d at 779, 531 N.E.2d at 922, quoting *Vanderbilt v. Marcin*, 127 Ill. App. 2d 192, 197, 262 N.E.2d 42, 44 (1970), quoting *People ex rel. Earley v. Bierman*, 249 Ill. App. 217, 220-21 (1928).

Andrews's first three allegations pertain to merely technical duties; the statute delineates no consequences in the event of failure to comply with those duties. See 10 ILCS 5/24A—9, 24A—10.1 (West 2004). Absent an allegation of fraud, we cannot find that the irregularities prevent an ascertainment of the people's will.

■ Andrews's fourth allegation, concerning initialed ballots, cannot invalidate the election. The Code provides merely that all uninitialed ballots must be invalidated, not that the presence of two uninitialed ballots must invalidate the entire election. 10 ILCS 5/24A—10.1 (West 2004).

■ Finally, we address the question of whether Andrews's allegations concerning misdirected voters in split precincts, if true, are sufficient to nullify the election in the three split precincts. We find they are not. Andrews alleges that all Newell Township voters in the three split precincts were given voter applications that directed poll workers to give them Blount Township ballots. Andrews does not allege that all Newell Township voters actually received Blount Township ballots. Other courts have found such allegations to be insufficient to withstand dismissal of the petition. See *Carbonara v. North Palos Fire Protection District*, 192 Ill. App. 3d 275, 276-77, 279, 548 N.E.2d 1100, 1101, 1103 (1989) (petition alleged that as many as 25 voters were purposefully or negligently directed to the wrong voting booth); see also *Graham*, 334 Ill. App. 3d at 1024-25, 779 N.E.2d at 397 (trial court's nullification of election was improper where votes in split precincts were not counted since voters were allegedly given the wrong ballot). The defeated candidate in *Graham* attached the affidavits of six voters stating they received the wrong ballot. *Graham*, 334 Ill. App. 3d at 1023, 779 N.E.2d at 396. The court in *Graham* reasoned that there was no evidence that the voters had intentionally been given the wrong ballot, had asked for or were denied the correct ballot, or were otherwise intentionally denied the right to vote for the candidate of their choice. *Graham*, 334 Ill. App. 3d at 1023-24, 779 N.E.2d at 396. We do find Peck's statement that he questioned election officials regarding his ballot to be troublesome (assuming that we may even consider Peck's affidavit). However, the original petition attached only a single affidavit, and, like *Graham*, there was no indication that voters were intentionally given the wrong ballot book or were intentionally denied the right to vote for the candidate of their choice.

The parties have cited no case holding that an error in ballot distribution, the magnitude of which is unknown, mandates that an election can or should be invalidated. Our research has found no such case in Illinois. While an election may be aborted where violations of the election laws were so numerous that no court could determine the number of legal votes for each candidate, this is not the case here. *Cf. Drolet v. Stentz*, 83 Ill. App. 2d 202, 207, 227 N.E.2d 114, 116 (1967). It cannot be said that everyone in the affected precinct received the wrong ballot. Obviously, Peck's father received the correct ballot. While election officials can and do make mistakes, at some point a voter, who intends to vote for a particular candidate and is handed a ballot form that does not include that candidate, has some obligation to know in which township he resides and to inquire of the election officials why his or her ballot does not contain the name of the favored candidate.

Such inadvertence, standing alone, is not sufficient to invalidate the entire election or even the election in the affected precinct. To do so would possibly disenfranchise more votes than those who were denied the opportunity to vote for Andrews. See *Graham*, 334 Ill. App. 3d at 1025, 779 N.E.2d at 397 (finding "no evidence of any systematic disenfranchisement of the voters"); *Morandi v. Heiman*, 23 Ill. 2d 365, 372-73, 178 N.E.2d 314, 318 (1961) ("the policy of directory construction should be applied to avoid disenfranchisement of the totally innocent *** voter").

For these reasons, we find that the petition was insufficient to contest the election's validity.

## B. Motions To Amend

In accordance with our ruling that Andrews's petition is not legally sufficient as to the invalidation of the election, we find the trial court properly denied his motions to amend. Amendments to petitions to contest filed beyond the statute of limitations are not proper where the original petition cannot withstand a motion to dismiss. *Evans v. Preckwinkle*, 259 Ill. App. 3d 187, 190-91, 636 N.E.2d 730, 732-33 (1994), citing *Zahray*, 25 Ill. 2d at 124, 182 N.E.2d at 758; see also *Ross*, 182 Ill. App. 3d at 696, 538 N.E.2d at 629, citing *Village of Hinsdale*, 281 Ill. App. at 588.

## C. Motion for a Recount on the Pleadings

The trial court properly denied Andrews's motion for recount on the pleadings. In violation of Supreme Court Rule 341(e)(7) (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001), Andrews fails to cite any authority for the proposition that his motion for recount on the pleadings under section 23—23.2 should be treated any differently than any other motion for judgment on the pleadings (735 ILCS 5/2—615(e) (West 2004)). The court based its decision on the fact that the motion was premature, given that the sufficiency of the motion had yet to be established. A motion for judgment on the pleadings generally is made after the issues are settled by the pleadings. *Oak Park National Bank v. Peoples Gas Light & Coke Co.*, 46 Ill. App. 2d 385, 393, 197 N.E.2d 73, 77 (1964).

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's dismissal of

Andrews's petition for an election contest but reverse the dismissal of his petition for a recount.

Affirmed in part and reversed in part.

MYERSCOUGH and KNECHT, JJ., concur.